UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| ROBERTO LUCIO,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN - FPC YANKTON,<br><br>Defendant. | 4:26-CV-04160-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS |

Petitioner Roberto Lucio filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1. Lucio argues that Respondent Warden FPC Yankton unlawfully failed to award him earned time credits under the First Step Act (FSA) of 2018, Pub. L. No. 115-391, 132 Stat. 5192. Id. at 10–11. Specifically, Lucio asks this Court to "order the [Bureau of Prisons] to calculate his FSA programming days in alignment with the statute and previous orders by this Court." Id. at 1. The Warden filed a Motion to Dismiss, asserting that this Court lacks subject matter jurisdiction over the petition. Doc. 6. The petition and motion were referred to United States Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B) and D.S.D. Civ. LR 57.11 for a recommendation on disposition. Judge Duffy filed a Report and Recommendation, Doc. 12, to grant Respondent's motion to dismiss to which Petitioner had objected, Doc. 13. For the reasons explained below, this Court adopts Judge Duffy's Report and Recommendation, Doc. 12, and grants the Warden's Motion to Dismiss, Doc. 6.

## I. Background

On March 21, 2023, Lucio was sentenced to 121 months imprisonment, followed by five years of supervised release. Doc. 1 at 1. As of May 30, 2026, Lucio earned 365 days of FSA credits towards beginning his term of supervised release early, and an additional 160 days of FSA credits towards prerelease custody. Doc. 8 ¶ 20. Lucio alleges that the Bureau of Prisons (BOP) unlawfully failed to credit 54 days towards his FSA credits for the time between March 21, 2023, when his sentence commenced, and May 15, 2023, when he arrived at his designated prison. Doc. 1 at 10. Lucio argues that the FSA requires the BOP to allow him to accrue FSA time credits from the day his sentence commences. Id. at 7. Lucio additionally argues that because sections 3624(g)(2) and 3632(D)(4)(c) use the word "shall," the FSA "greatly reduce[s] the BOP's discretion" originally given to them in 18 U.S.C. 3621(b)(5)," and requires the BOP to calculate FSA credits in accordance with the statute. Id. at 2. Lucio presently is incarcerated at the Federal Prison Camp in Yankton, South Dakota.

The Warden moved to dismiss for lack of subject matter jurisdiction.[1] Doc. 6. The Warden argues that (1) because Lucio has received the maximum 365 days of FSA credits applied towards early termination of his sentence, Lucio's petition for further credits amounts to a non-cognizable challenge to his place of confinement, (2) Lucio's arguments regarding the mandatory language of the FSA do not "bypass this jurisdictional bar," and (3) no exceptional theories apply to Lucio's petition. Doc. 7 at 3–5. Judge Duffy issued a report and recommendation that the motion to dismiss for lack of jurisdiction be granted. Doc. 12. Lucio filed an objection to the report and recommendation. Doc. 13.

---

[1] Because this Court lacks subject matter jurisdiction, it does not address the Warden's alternative arguments.

## II. Standard of Review

This Court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's report and recommendation, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

## III. Discussion

The FSA was enacted on December 21, 2018, and brought about several prison and sentencing reforms. Under the FSA, time credits may be earned by eligible prisoners who successfully complete "evidence-based recidivism reduction programming" or "productive activities." 18 U.S.C. § 3632(d)(4)(A). Notably, the FSA does not limit the amount of earned time credits a prisoner can earn. See 18 U.S.C. § 3632(d)(4) (no limit in FSA); id. § 3624(g)(10) ("The time limits under subsections (b) and (c) [of the Second Chance Act] shall not apply to prerelease custody under this subsection."). While not all programs or activities that a prisoner may engage in while incarcerated qualify for time credits under the statute, in practice, the BOP has a "fluid approach to awarding FSA time credits [ ] in at least two other circumstances." See id. §§ 3635(3), (5); Miles v. Bowers, 173 F.4th 372, 376–77 (1st Cir. 2026). These circumstances include "when the prisoners are 'able and willing' to complete programming post-assessment but suitable programming is unavailable" or "when '[t]emporary operational or programmatic interruptions authorized by the Bureau . . . prevent an inmate from participation in EBRR programs,'" which can occur when understaffed BOP facilities go into lockdown. Miles, 173 F.4th at 376–77 (citing Borker v. Bowers, No. 24-10045, 2024 WL 2186742, at *2–3 (D. Mass. May 15,

2024) (emphasis omitted) (internal quotation marks omitted), appeal dismissed, 2024 WL 5319356 (1st Cir. Oct. 25, 2024)). Essentially, "prisoners [can] accrue credits based on the number of days they spent seeking to participate in programming that is unavailable for reasons attributable to the BOP." Id. at 377.

The FSA places a number of limitation on the application of time credits. "If an eligible prisoner's sentence includes a term of supervised release after imprisonment, the BOP may apply earned FSA time credits [ ] to begin the term up to twelve months earlier." Fortner v. Eischen, 170 F.4th 655, 657 (8th Cir. 2026) (citing 18 U.S.C. § 3624(g)(3)). After the BOP has applied the twelve-month maximum number of earned time credits towards the prisoner's early release, "[t]he BOP shall apply additional earned FSA time credits to expedite the prisoner's eligibility for prerelease custody in a residential reentry center (halfway house) or in home confinement." Id. (citing 18 U.S.C. §§ 3632(d)(4)(C), 3624(g). As these credits accumulate, they move up a prisoner's conditional prerelease date, which is the day that the BOP may consider eligible prisoners for prerelease custody, such as home confinement or a residential reentry center. See 18 U.S.C. § 3624(g)(1)(D)(i), (g)(2). These are the time credits that Lucio claims that Warden has not properly calculated or awarded.

A federal court has subject matter jurisdiction over a habeas petition under 28 U.S.C. § 2241. "Good-time (or earned-time) credits usually shorten an inmate's sentence. Therefore, when an inmate alleges unlawful deprivation of good-time credits, the relief he seeks is immediate or speedier release from imprisonment and 'his sole federal remedy is a writ of habeas corpus.'" Minter v. Bartruff, 939 F.3d 925, 928–29 (8th Cir. 2019) (parentheses in original) (quoting Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)); see also Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) ("If the prisoner is not challenging the validity of his conviction or the length of his

detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy. It is the substance of the relief sought which counts.") (citing Preiser, 411 U.S. at 499); United States v. Thompson, 297 F. App'x 561, 562 (8th Cir. 2008). Such petitions must be filed in the district in which the petitioner is incarcerated, which for Lucio is the District of South Dakota. See Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004); Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Bell v. United States, 48 F.3d 1042, 1043–44 (8th Cir. 1995). In addition, "[a] federal inmate normally must exhaust his administrative remedies before seeking habeas relief under 18 U.S.C. § 2241." Jennings v. Yates, No. 2:22-CV-130, 2023 WL 3025487, at *2 (E.D. Ark. Apr. 20, 2023) (citing Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009)).

> The BOP has a four-step administrative exhaustion process for resolving inmate grievances: (1) a prisoner must submit an informal resolution with prison staff; (2) if the informal resolution is denied, a prisoner must submit a formal grievance to the Warden, on form BP-9; (3) if the formal grievance is denied, a prisoner must file an appeal of the Warden's decision to the appropriate Regional Director, on form BP-10; and (4) if the appeal is denied, the prisoner must challenge the Regional Director's decision by taking a final appeal to the General Counsel, on form BP-11.

Id. (citing 28 C.F.R. §§ 542.13–542.18). The Eighth Circuit has held that prisoners may use a habeas petition to challenge the fact or duration of their confinement. Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014). Before Congress enacted the FSA, the Eighth Circuit had held that a prisoner may not use a habeas petition for a "conditions-of-confinement claim." Id. at 471; Kruger, 77 F.3d at 1073.

The FSA's earned time credit structures and how the BOP has chosen to treat those credits have resulted in a new type of habeas claim. In the last seven months, the Eighth Circuit has issued two opinions discussing claims brought by prisoners challenging the calculation and application of FSA credits. Those two cases—Fortner, 170 F.4th 655 (decided March 13, 2026), and Osorio-Calderon, 179 F.4th 1158 (decided June 30, 2026)—guide consideration of Lucio's petition.

Osorio-Calderon is the more straightforward decision. Osorio-Calderon accumulated 1,095 days of time credits, of which 365 days were applied to advance his projected release date and the remaining 730 days were applied toward time in prerelease custody. Osorio-Calderon, 179 F.4th at 1162. Although Osorio-Calderon became eligible for prerelease custody in July 2024, the BOP denied his request to be placed in prerelease custody, and he remained incarcerated at a BOP facility well into 2026. Id. After the BOP denied his request to be placed in prerelease custody following the date of his eligibility, Osorio-Calderon filed a petition seeking "an order requiring his immediate transfer to prerelease custody" or in the alternative, "mandamus relief compelling the BOP to effectuate that transfer." Id. (citing 28 U.S.C. § 1361). Osorio-Calderon argued that "although the BOP retains discretion regarding the manner and location of prerelease placement, Congress removed any discretion over whether an eligible prisoner will be transferred" by using the word "shall" in sections 3632(d)(4)(C) and 3624(g) of the FSA. Id. at 1163 (explaining that "[s]ection 3632(d)(4)(C) provides that earned 'time credits...*shall* be applied toward time in prerelease custody or supervised release' and that the BOP '*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.'") (emphasis in original).

Because the "BOP made an individualized determination under § 3621(b) that Osorio-Calderon would not be transferred to prerelease custody," the Eighth Circuit concluded that the BOP's decision was "not reviewable by any court." Id. at 1165 (quoting 18 U.S.C. § 3621(b)). Osorio-Calderon is congruent with the BOP's "longstanding discretion under § 3621(b)," and the frustration of "practical realities of safe and effective reintegration" that could arise if the BOP were required to "transfer prisoners immediately upon eligibility, without considering whether an appropriate prerelease placement exists." Id. The Eighth Circuit did not discuss whether the

district court had subject matter jurisdiction over Osorio-Calderon's habeas petition but decided that Osorio-Calderon was not entitled to relief because the BOP's decision not to move up his release date was unreviewable under § 3521(b).

The Fortner decision is a bit less straightforward in that it addresses habeas jurisdiction in sections that appear to be dicta. 170 F.4th at 656, 658–59. Fortner was a federal prisoner detained at the minimum security BOP facility in Minnesota. Id. at 656. After the BOP denied Fortner's request for expedited transfer to prerelease custody, Fortner filed a motion for habeas relief under 28 U.S.C. § 2241, "alleging that the BOP wrongfully refused his request to properly award and apply additional [FSA credits] for the 543 days he was incarcerated in Texas that would make him eligible for transfer to prerelease custody sooner." Id. at 656–57. Fortner argued that if the BOP were to apply the FSA credits he earned in Texas, he would have been eligible for prerelease custody at the time he filed his petition. Id. at 657. Before the Eighth Circuit decided the case, but after oral arguments, Fortner "was moved to a halfway house, which is precisely the relief his habeas petition requested and the BOP previously denied." Id. at 659. The Eighth Circuit in Fortner concluded that Fortner's appeal was moot due to Fortner's release to a halfway house. Id. at 658, 660.

The Fortner decision, despite ultimately dismissing the appeal as moot, framed and discussed the following question:

> [W]hether, when the Bureau of Prisons (BOP) denies a federal prisoner's request for expedited transfer to prerelease custody, does a district court have jurisdiction under the federal habeas corpus statutes, 28 U.S.C. §§ 2241-55, to consider the prisoner's claim that the BOP violated his statutory rights under the First Step Act?

Id. at 656. The beginning of the "Background" section of the decision addressed that issue and "The Underlying Legal Issue" section largely answered that question. Because Fortner's requested relief would only correct the date he would be eligible for transfer to prerelease custody, the Eighth

Circuit saw the ultimate issue as "whether conditions of confinement claims are cognizable in habeas." Id. at 658. Although the Supreme Court had left that question open in Preiser, the Fortner decision noted that the Eighth Circuit had "joined what is now the long side of the longstanding circuit split" in Kruger, 77 F.3d at 1073, holding that habeas is not the proper remedy where "the prisoner is not challenging the validity of his conviction or the length of his detention." Fortner, 170 F.4th at 658. The Fortner decision stated that Kruger and Spencer—both cases decided before Congress enacted the FSA— "appear to dispose of this case." Id. at 658. "If Fortner receives the remedy he seeks, he would still be detained for the same length of time, though he would serve the detention in a different location with better conditions." Id. ("The relevant statute calls those in prerelease custody 'prisoners' who are serving 'a term of imprisonment.' 18 U.S.C. § 3624(c)."). The Fortner decision then stated "[p]etitioning for supervised release is cognizable in habeas though it is still a form of custody. Supervised release is not detention, but prerelease custody is." Id.

Fortner at a minimum suggests that federal courts lack jurisdiction in habeas over claims like Lucio's because prerelease to a residential reentry center or home confinement remains detention. Id. (observing that "unlike good-time credits, [FSA credits] beyond the first 365 do not lead to sooner release, only to earlier commencement of prerelease custody."). Yet Congress implemented the ability to earn FSA credits as an incentive for participation in recidivism reducing programming, and that incentive is meant to continue past obtaining the maximum FSA credits application toward a supervised release start date. The FSA clearly contemplates that prisoners may continue to earn FSA credit after they reach the twelve-month maximum credit toward their supervised release date. See 18 U.S.C. § 3624(g)(3) (providing that the BOP "may transfer [such eligible] prisoner to begin any such term of supervised release at an earlier date, not to exceed 12

months, based on the application of [FSA credits] under section 3632"); id. § 3632(d)(4)(C) (providing that FSA credits "shall be applied toward time in prerelease custody or supervised release"). To construe any subsequent prisoner's challenge to FSA credit calculations, after the maximum number of FSA credits has been applied towards beginning a term of supervised release, as a challenge to conditions of confinement seems to deny a prisoner "his sole federal remedy" for improperly calculated FSA credits and undercut the purpose of the FSA. Minter, 939 F.3d at 928–29.

This issue is set for argument before the Supreme Court in November 2026. See Maxwell v. Dinis, No. 25-5930 (U.S. June 1st, 2026) (granting certiorari "limited to the following question: Whether a claim regarding application of time credits under the [FSA], seeking accelerated transfer to a halfway house or home confinement, can be brought in a habeas petition under 28 U.S.C. § 2241.").[2] In that case, Respondent Sandra Dinis, Acting Warden, is *not* arguing that the district court lacked jurisdiction over Maxwell's habeas petition as a challenge to conditions of confinement. Brief for the Respondent Supporting Vacatur at 14, Maxwell v. Dinis, No. 25-5930, (U.S. Aug. 5, 2026) ("A prisoner's claim alleging the unlawful withholding of First Step Act time credits and seeking accelerated transfer to a halfway house or home confinement is cognizable in habeas."). Dinis notes a string of cases following Preiser that indicate "a claim alleging unlawfully

[2] Maxwell is an inmate at FCI Beaumont Low seeking, in sum, to be transferred from Beaumont Low to prelease custody. Maxwell v. Warden, FCI Beaumont Low, No. 1:22-CV-40, 2023 WL 6635074, at *1 (E.D. Tex. Feb. 13, 2023), report and recommendation adopted, No. 1:22-CV-40, 2023 WL 6578464 (E.D. Tex. Oct. 6, 2023), aff'd sub nom. Maxwell v. Thomas, 133 F.4th 453 (5th Cir. 2025). The district court rejected Maxwell's claim for failure to exhaust administrative remedies before bringing the habeas petition. Id. at *3. On appeal, however, the Fifth Circuit affirmed the district court on the ground that Maxwell was not seeking outright release. Maxwell v. Thomas, 133 F.4th 453, 454 (5th Cir. 2025) ("Here, the nature of Maxwell's requested relief is transfer to a halfway house or home confinement. Under [Melot v. Bergami, 970 F.3d 598 (5th Cir. 2020)]'s "bright-line rule," neither form of relief would entitle him to accelerated release, so the relief he seeks is properly brought in a civil rights suit.")

prolonged imprisonment and seeking immediate or accelerated release from prison—such as release to parole, as in Preiser itself—must be brought in habeas." Id. Dinis argues that Maxwell's petition should "nevertheless fail on other grounds," as Maxwell failed to exhaust available administrative remedies on his FSA claim before seeking habeas under § 2241. Id. at 35.

Regardless, district courts in the Eighth Circuit have relied on Fortner to dismiss habeas petitions raising claims similar to Lucio's petition. See, e.g. McDonald v. Humphrey, No. 2:26-CV-00051-BSM-JJV, 2026 WL 1811454 (E.D. Ark. June 8, 2026), report and recommendation adopted, No. 2:26-CV-00051-BSM, 2026 WL 1810679 (E.D. Ark. June 23, 2026); Sorensen v. Humprey, No. 2:26-CV-00031-BSM-JJV, 2026 WL 1340826 (E.D. Ark. Apr. 22, 2026), report and recommendation adopted sub nom. Sorensen v. Humphrey, No. 2:26-CV-00031-BSM, 2026 WL 1338791 (E.D. Ark. May 13, 2026) (dismissing the habeas petition where the prisoner sought to be awarded more FSA credits); Durham v. Humphrey, No. 2:26-CV-00027-DPM-JJV, 2026 WL 1450434 (E.D. Ark. Apr. 8, 2026), report and recommendation adopted, No. 2:26-CV-27-DPM, 2026 WL 1162613 (E.D. Ark. Apr. 29, 2026) (dismissing habeas petition where the prisoner has already had the "maximum number of [FSA credits] toward his early release to supervised release"); Madrigal-Vega v. Director, Fed. Bureau of Prisons; & Warden, FPC Duluth, No. CV 25-3675 (JRT/EMB), 2026 WL 2240503 (D. Minn. Aug. 4, 2026) (dismissing the habeas petition where the prisoner claimed the BOP miscalculated his FSA credits). This Court recently applied Fortner to a claim similar to that of Lucio. Aguilar v. Warden, No 4:26-CV-04018-RAL, Doc. 16 (D.S.D. Sept. 11, 2026). Fortner of course is controlling precedent in the Eighth Circuit. Although it is tempting to deny the motion to dismiss and await decision in Maxwell v. Dinis, this Court reads Fortner to mean that there is no jurisdiction under § 2241 to provide Lucio the relief he seeks.

If Maxwell v. Dinis results in a decision rendering Fortner nugatory, Lucio can refile a § 2241 petition.

## IV. Certificate of Appealability

"[A] [] prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." Miller-El v. Cockrell, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). "Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a [certificate of appealability] from a circuit justice or judge." Id. at 335–36. A certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that demonstrates "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This Court may be incorrect in applying what is dicta in Fortner, and the issue Lucio raises in an appeal to the Supreme Court of the United States. Thus, reasonable jurists could disagree with this decision, and a certificate of appealability is granted on the issue of whether the district court has jurisdiction over Lucio's habeas petition.

## V. Conclusion

Based on the foregoing, it is

ORDERED that Magistrate Judge Veronica L. Duffy's Report and Recommendation, Doc. 12, is adopted. It is further

ORDERED that Petitioner's Objection to the Magistrate Judge's Report and Recommendation, Doc. 13, is overruled. It is further

ORDERED that Respondent's Motion to Dismiss, Doc. 6, is granted, and Lucio's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Doc. 1, is dismissed without prejudice. It is finally

ORDERED a certificate of appealability will issue.

DATED this 15th day of September, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE